IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| HARRY HUDDLESTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10-995-JPG-DGW |
| | ) | |
| CITY OF ALTON, ILLINOIS; ALTON | ) | |
| MEMORIAL HOSPITAL; STEPHEN | ) | |
| JANUARY; ANDREW PIERSON; | ) | |
| MATTHEW W. WRIGHT; and | ) | |
| ALAN WILLIAMSON, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF DAUBERT MOTION TO EXCLUDE EXPERT OPINIONS AND TESTIMONY

Now come the defendants, CITY OF ALTON, ILLINOIS; STEPHEN JANUARY; and ANDREW PIERSON, by and through their undersigned attorneys, PIERCE LAW FIRM, P.C., and for their Memorandum in Support of Daubert Motion to Exclude Expert Opinions and Testimony, state as follows:

On December 9, 2008, plaintiff became irate and violent while at Alton Memorial Hospital. Hospital personnel contacted the Alton Police Department to assist them in controlling Mr. Huddleston and his relatives. Mr. Huddleston continued to refuse to comply with lawful police orders and ultimately was subjected to a taser application by Alton Police Officer Andrew Pierson.

Plaintiff's primary treating physician in this case and his family physician for over thirty years is Dr. Sadiq Mohyuddin. See Mohyuddin deposition, p. 21. Dr. Mohyuddin opined that Huddleston experienced rhabdomyolysis as a result of the tasing. Mohyuddin deposition, p. 8.

1

Rhabdomyolysis is a medical condition where muscles break down. Dr. Mohyuddin's testimony, however, is completely and utterly speculative and without any foundation.

Plaintiff was seen in the hospital by a cardiologist, Dr. Rama Gondi. See Dr. Gondi deposition, p. 6. In his records, he had made a diagnosis of rhabdoymyolysis. At his deposition, however, he conceded that he has no expertise in that and that it would essentially be speculation for him to make that diagnosis. Gondi deposition, p. 44.

Admissibility of testimony like this is governed by Rule 702 of the Federal Rules of Evidence which provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

It is the trial judge's task of ensuring that expert's testimony both rest on reliable foundation and is relevant to the task at hand. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993). The Supreme Court in *Daubert* makes it plain that the trial judge is to act as the gatekeeper in screening such testimony for relevance and reliability, that is, to make an assessment whether the reasoning and methodology underlying the testimony is scientifically valid. See e.g., *Peitzmeier v. Hennessy Industries, Inc.*, 97 F.3d 293, 296-97 (8th Cir. 1996). This "gatekeeping" obligation applies not only to testimony based on scientific knowledge but to all expert testimony. *Kumho Tire Company, Ltd. v. Carmicheal,* 526 U.S. 137, 149 (1999).

The requirement that testimony be reliable is satisfied by showing that the witness possesses the expertise it qualifies the witness to testify in on a particular subject matter. *Roberson v. Norton Company*, 148 F.3d 905, 907 (8th Cir. 1998). Factors to consider in making the reliability inquiry are: (1) whether the theory, reasoning, methodology or technique can be

and has been tested; (2)  whether it has been subjected to pure review and publication; (3) the known or potential rate of error; and (4) whether the method or theory utilized enjoys widespread acceptance.  *Daubert*, 509 U.S. at 593-94.

In addition to being reliable, expert testimony must also be relevant in order to be admissible.  *Daubert*, 509 U.S. at 589.  Whether testimony is relevant depends on whether the testimony can properly be applied to assist the trier of fact to decide facts in issue.  *Id.*

In the instant case, Dr. Mohyuddin renders opinions regarding causation of plaintiff's supposed rhabdomyolysis as being related to this tasing.

Dr. Mohyuddin is a family practitioner in Godfrey.  He has never treated a patient other than Mr. Huddleston who has been tased.  He has read no medical literature on tasing other than unnamed newspaper articles.  Mohyuddin deposition, pp. 7, 9, 13-14.  He does not know how the taser was actually used in this case.  Mohyuddin deposition, p. 11.  Mohyuddin did not know that the taser could be used in two different ways, i.e., touch stun and a probe tase Mohyuddin deposition, pp. 10-11.[1]  Dr. Mohyuddin does not know how a taser operates.  Mohyuddin deposition, pp. 10-12.  Dr. Mohyuddin does not know how many volts would be enough to cause rhabdomyolysis.  Mohyuddin deposition, p. 11.  Dr. Mohyuddin has not testified in any taser case in the past.  Mohyuddin deposition, p. 12.  Dr. Mohyuddin has seen a taser only on TV.  Mohyuddin deposition, p. 13.  Dr. Mohyuddin even thinks that the tasers have different settings which can affect the amount of electricity going into the person's body.  Mohyuddin deposition, p. 12.  This is absolutely false.  Dr. Mohyuddin believes that it is "common knowledge" that tasers can cause rhabdomyolysis but can cite to no source for this supposed belief.  Mohyuddin

---

[1] A touch stun causes localized pain to provide what is known as "pain compliance". A probe tase causes an electromuscular disruption which in essence "locks up" the person's entire body.

deposition, pp. 14-15.  It is clear from Dr. Mohyuddin's lack of experience with a taser that he is not qualified to offer any opinions regarding its effect on Huddleston.

Additionally, Dr. Mohyuddin's theory is that this single taser deployment resulted in rhabdomyolysis does not meet the minimum standards required by *Daubert* ordered to be admissible as an expert opinion.  First, there is no evidence that Mohyuddin's theories have been tested.   Second, there is no evidence that Mohyuddin has written on the subject of taser deployments resulting in rhabdomyolysis and there has been no peer review or publication of his opinions in this regard.   Third, because there has been no peer review, the rate of error of Dr. Mohyuddin's theories is unknown.   Finally, there is no evidence that the theories utilized by Dr. Mohyuddin enjoy widespread acceptance.   As such, the theories must be excluded.

The entire deposition of Dr. Mohyuddin is attached hereto as an exhibit.  Rather than attaching the sound bites and being accused of misinterpreting the deposition, defendants felt it appropriate for the Court to review the entirety of Dr. Mohyuddin's testimony.  It is obvious that his opinions are based on speculation and guess work.  When questioned, he could provide no legitimate basis for his belief that rhabdomyolysis is caused by tasing.  He can cite to no medical publication which provides that causal link.  He has no experience or expertise in tasers or their effects.  He has never studied them, researched them, or even casually read about them other than in newspaper articles.  Defendants would hazard a guess that unnamed newspaper articles are not as sufficiently reliable as peer reviewed medical journals in providing a basis for medical opinions.  Mohyuddin, to his credit, agreed with that proposition.  Mohyuddin deposition,  p. 7.  Dr. Mohyuddin's testimony is quite possibly the most speculative unsupported medical testimony the undersigned has seen.  The jury should not be allowed to hear such rampant

speculation.   Dr. Mohyuddin's testimony would not aid the jury and in fact would tend to confuse it.  Plaintiff cannot rely on such baseless testimony.

Similarly, Dr. Gondi originally  had indicated there was rhabdomyolysis.  To his credit[5], he has retreated from that position by way of his deposition.  Like Dr. Mohyuddin, he has no expertise in this field and has no basis for opining that rhabdomyolysis was caused by tasing. Gondi deposition, pp. 7, 11, 36, 44, 46, 48.  Similarly, he has testified that he was able to rule out any cardiac related problems from the tasing.  Gondi deposition, p. 25.

Simply stated, neither of these physicians have any adequate training or expertise to testify as to a causal link between tasing and any injury, let alone rhabdomyolysis.  This is not even a close call.   Neither of these physicians, although likely competent at their jobs, possess the requisite expertise and knowledge to testify as to the issues in this case.

Plaintiff elected not to disclose any retained opinion witnesses and the time for them doing so has passed.  At present, there is no competent testimony from any of plaintiff's treating physicians that plaintiff suffered any injury as a result of being tased.  Should plaintiff attempt to utilize any physicians other than Dr. Mohyuddin or Dr. Gondi, they should be required to prove, outside the presence of the jury, that there exists any foundation for the testimony.

WHEREFORE, the defendants, CITY OF ALTON, ILLINOIS; STEPHEN JANUARY; and ANDREW PIERSON, pray that this Court enter an order:

a)  Excluding the opinions and testimony of Dr. Sadiq Mohyuddin;

b)  Excluding the opinions and testimony of Dr. Rama Gondi;

c)  Excluding any other physicians or lay personnel from testifying as to any alleged correlation between the plaintiff having been tased and any medical condition without

first holding a hearing outside the presence of the jury at which time the plaintiff must

establish adequate foundation to satisfy the *Daubert* requirements.

Respectfully Submitted,

By:  s/Charles A. Pierce
PIERCE LAW FIRM, P.C.
#3 Executive Woods Court, Suite 200
Belleville, IL 62226
Phone: 618-277-5599
Fax: 618-239-6080
E-mail: cpierce@piercelawpc.com
Attorney Bar # 06208106

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2011 I electronically filed a MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE EXPERT OPINIONS AND TESTIMONY on behalf of the defendants, CITY OF ALTON, STEPHEN JANUARY and ANDREW PIERSON, with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

Mr. Stephen Ryals
Mr. John Bruzek
The Ryals Law Firm
3120 Locust Street
St. Louis, MO  63103

Respectfully submitted,

s/CHARLES A. PIERCE
Pierce Law Firm, P.C.
#3 Executive Woods Court, Suite 200
Belleville, IL  62226
Phone: (618) 277-5599
Fax: (618) 239-6080
E-mail: cpierce@piercelawpc.com
Attorney Bar Number # 06208106